FILED
2015 Mar-27 PM 03:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **MICHAELENE TETTEH,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v.                           } | **Case No.: 5:11-cv-00825-MHH** |
| } | |
| **WAFF TELEVISION, and** } | |
| **RAYCOM MEDIA, Inc.,** } | |
| } | |
| **Defendants.** | |

## <u>Memorandum Opinion</u>

### Introduction

Plaintiff Michaelene Tetteh filed this employment action against WAFF Television and Raycom Media, Inc. (collectively "WAFF"). In her complaint, Ms. Tettah alleges claims for race and gender discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq* and §1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981. She also asserts a claim for disability discrimination pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*. (Doc. 1).

WAFF moved for summary judgment on all of Ms. Tetteh's claims. (Doc. 24). The Honorable John H. England III, Magistrate Judge, entered a report in which he recommended that the Court grant WAFF's summary judgment motion as to all claims. (Doc. 48). Ms. Tetteh objected to the report and recommendation.

(Doc. 51). Based on its review of the evidence, the Magistrate Judge's report and recommendation, and Ms. Tetteh's objections, the Court will grant WAFF's summary judgment motion on all of Ms. Tetteh's claims.

**Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party opposing a motion for summary judgment must identify disputed issues of material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c). When considering a summary judgment motion, the Court must view the evidence in the record in the light most favorable to the non-moving party. *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

When reviewing a Magistrate Judge's report and recommendation, the Court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection has been made." 28 U.S.C. § 636(b)(1). When a party specifically objects to portions of the report and

recommendation, the district judge must "give fresh consideration to those issues." *Jeffrey S. by Ernest S. v. State Bd. of Educ. Of State of Ga.*, 896 F.2d 507, 512 (11th Cir. 1990) (quoting H.R. Rep. No. 94–1609, *reprinted in* 1976 U.S.C.C.A.N. 6162, 6163). The Court reviews for clear error the portions of the report and recommendation to which no party has objected. *Macort v. Prem, Inc.*, 208 Fed. Appx. 781, 784 (11th Cir. 2006). The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

**Factual and Procedural Background**

In Ms. Tetteh's objection to the Magistrate Judge's report and recommendation, she reproduced, paragraph-for-paragraph, the statement of facts from her brief in opposition to summary judgment. (*Compare* Doc. 29, pp. 17–27 ¶¶ 1–185 *with* Doc. 51, pp. 1–31 ¶¶ 1–185). To the extent that Ms. Tetteh intended to object to the facts recited in the report and recommendation, her objections are not sufficiently specific.

The facts recited by Ms. Tetteh, along with the underlying evidentiary record, served as the basis for the Magistrate Judge's findings. (*See* Doc. 48, pp. 3–15). The Court has reviewed the parties' briefs and supporting evidence. To the extent that Ms. Tetteh's legal objections include specific factual objections, they are addressed below. *See Macort*, 208 Fed. Appx. at 784. Otherwise, the Court

finds no clear error in the Magistrate Judge's factual findings and adopts the facts in the report and recommendation. (Doc. 48, pp. 3–15).

**Discussion**

Title VII of the Civil Rights Act prohibits employers from discriminating in the workplace on the basis of a person's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). An employee may sue an employer under the Act when an employer treats the employee differently based on one of Title VII's suspect categories. *See id.* § 2000e-2(a). "Disparate treatment can take the form either of a 'tangible employment action,' such as firing or demotion, or of a 'hostile work environment' that changes 'the terms and conditions of employment, even though the employee is not discharged, demoted, or reassigned.'" *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 807 (11th Cir. 2010) (quoting *Hulsey v. Pride Rests., LLC*, 367 F.3d 1238, 1245 (11th Cir. 2004)). Ms. Tetteh alleges that WAFF subjected her to a hostile work environment based on her gender and race and that WAFF took tangible employment actions against her.[1] The record does not support Ms. Tetteh's claims.

---

[1] Both Title VII and § 1981 have the same requirements of proof and use the same analytical framework. *See Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998). Therefore, the Court discusses the Title VII claims with the understanding that the analysis applies equally to Ms. Tetteh's § 1981 claims. Although the relevant statutes of limitations and filing periods for the two claims differ, that difference is irrelevant to the Court's holding.

## A. Hostile Work Environment –Gender and Race

Ms. Tetteh's hostile work environment claims against WAFF are without merit because the entirety of Ms. Tetteh's evidence reveals conduct that was neither severe nor pervasive enough to allow her to maintain a hostile work environment claim under Eleventh Circuit law.[2] When an employee bases a harassment claim on race, he must prove five elements:

> (1) that he is a member of a protected class; (2) that he was subjected to unwelcome racial harassment; (3) that the harassment was based on his race; (4) that the harassment was severe or pervasive enough to alter the terms and conditions of his employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for the environment under a theory of either vicarious or direct liability.

*Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1248–49 (11th Cir. 2014). The standard for proving a hostile work environment claim based on sex is the same, except the harassment must be based on sex rather than race. *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999) (*en banc*).

---

[2] For the purpose of analyzing this claim, the Court assumes that Ms. Tetteh's allegations against WAFF consist of ongoing conduct that would allow her claim to survive WAFF's statute of limitations defense. The Magistrate Judge found that the gender- and race-based conduct that forms the basis of Ms. Tettah's claims occurred outside of the limitations period and was not ongoing, so that the statute of limitations barred Ms. Tetteh's hostile work environment claims. (Doc. 48, pp. 19–21). The Magistrate Judge found alternatively that WAFF's conduct as a whole was not sufficiently severe or pervasive to enable Ms. Tettah's gender- or race-based hostile work environment claims to withstand WAFF's motion for summary judgment. (Doc. 48, pp. 20 n.15, 21 n.17). The Court rests its decision to enter judgment for the defendants on Ms. Tetteh's hostile work environment claims on the Magistrate Judge's alternative rationale that WAFF's conduct was not sufficiently severe or pervasive.

5

"Title VII is not a 'general civility code,' and 'simple teasing . . . offhand comments, and isolated incidents (unless extremely serious)' do not constitute a hostile work environment." *Guthrie v. Waffle House, Inc.*, 460 Fed. Appx. 803, 806 (11th Cir. 2012) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). An employee must prove that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).

"In evaluating allegedly discriminatory conduct, [courts] consider its 'frequency[;] . . . its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Reeves*, 594 F.3d at 808–09. Offensive conduct does not always meet this threshold. *See, e.g.*, *Guthrie*, 460 Fed. Appx. at 807–08 (two male co-workers' repeated, graphic sexual comments and advances toward a female co-worker over an eleven-month period insufficient to show severity or pervasiveness); *Mendoza*, 195 F.3d at 1245 (a few instances of inappropriate touching, sexually tinged noises, and constant staring over an eleven-month period insufficient to show pervasiveness).

Although it is difficult to identify a bright line in these cases, generally speaking, offensive conduct must saturate the workplace to constitute a hostile

6

work environment. *See, e.g.*, *Reeves*, 594 F.3d at 804 (holding that gender-based discrimination "on a daily basis" was sufficiently frequent to withstand summary judgment); *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002) (holding that a co-worker's use of ethnic slurs "three to four times a day" over a one-month period was sufficiently pervasive to show a hostile work environment); *Dees v. Johnson Controls World Serv's, Inc.*, 168 F.3d 417, 418 (11th Cir. 1999) (reversing summary judgment for an employer when the plaintiff had been subjected to "almost-daily abuse").[3]  Conduct that takes place infrequently is not sufficiently pervasive. *See, e.g.*, *Guthrie*, 460 Fed. Appx. at 807 ("only a few dozen comments or actions" by two co-workers spread out over eleven months insufficient to show pervasiveness); *Mendoza*, 195 F.3d at 1245 (four instances of harassing comments or conduct and "constant following and staring at [the plaintiff]" over eleven-month period insufficient to show pervasiveness).

Ms. Tetteh's hostile work environment claim fails as a matter of law because her evidence of gender-based harassment does not meet the Eleventh Circuit standard for severity or pervasiveness.  Ms. Tetteh established that Mr. Theissen

---

[3] Evidence of conduct that is less frequent but more severe may give rise to a jury question in a hostile work environment case. *See Hulsey v. Pride Restaurants, LLC*, 367 F.3d 1238, 1248 (11th Cir. 2004) (male co-worker's "direct and indirect propositions for sex," including multiple instances of unwanted touching, constituted sufficiently severe conduct); *Johnson v. Booker T. Washington Broadcasting Serv., Inc.*, 234 F.3d 501, 509 (11th Cir. 2000) (male co-worker's conduct sufficiently severe when he gave the plaintiff unwanted massages and otherwise engaged in unwanted physical contact on multiple occasions).

twice referred to female reporters as "dumb," (Doc. 26-1. pp. 13–14), once referred to Ms. Tetteh as his "weekend girl," (Doc. 26-1, p. 36), and once focused his camera on a female spectator's cleavage, later reviewing the footage with Tetteh and another WAFF employee present. (Doc. 26-1, pp. 43–44). These events occurred over approximately twenty-months. Unlike the frequent, offensive conduct that has enabled plaintiffs in other hostile work environment cases to survive summary judgment, these four instances of sex-based harassment are dispersed over too long a period of time to establish pervasiveness. *See, e.g.*, *Mendoza*, 195 F.3d at 1245 (four instances of harassing conduct not enough).

And none of these four incidents of gender-based conduct are severe enough to create a jury question. Only one of the four instances—the "weekend girl" comment—involved an explicit sex-based comment, and all the comments taken together do not amount to a hostile work environment. The alleged videotape incident, though offensive if proven, still is not severe enough to enable Ms. Tetteh to avoid summary judgment.

Ms. Tetteh likewise fails to show race-based harassment pervasive or severe enough to withstand summary judgment. Mr. Theissen twice referred to African-American reporters as "dumb" in Ms. Tetteh's presence, and he told Ms. Tetteh that he did not enjoy going to two events, predominantly attended by African Americans, because there would be "dumb" people there, and he did not like

dealing with them.  (Doc. 26-1, pp. 13–14).  Ms. Tetteh contends that these comments suggest that Mr. Theissen viewed African-Americans as less capable than others.  (Doc. 51, pp. 38–39).  Mr. Theissen's race-based comments fall short of what is required to submit a hostile work environment claim to a jury.  *See, e.g.*, *Adams*, 754 F.3d at 1254–55 (holding that some employees had not shown an objectively hostile work environment even though they had seen racist graffiti in the restroom, heard co-workers use overt racial slurs a few times, and heard about a noose that had been placed in the bathroom, all over the course of two years).

Considering Mr. Theissen's entire course of conduct, Ms. Tetteh's hostile work environment claims fail because Mr. Theissen's conduct was not severe or pervasive under Eleventh Circuit case law.  The Court adopts the recommendation of the Magistrate Judge and will enter summary judgment on Ms. Tetteh's hostile work environment claims.

### B. Gender Discrimination – Termination

Ms. Tetteh fails to offer evidence to show that WAFF's reason for not allowing her to return to work was a pretext for gender discrimination.  Therefore, Ms. Tetteh's gender discrimination claim fails.  *See Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)).  WAFF contends that it did not allow Ms. Tetteh to return to work because for an extended period of time, she

could not perform her essential job functions and that, when she finally was able to return, WAFF had filled her position. (Doc. 30-21, p. 50). Ms. Tetteh fails to offer evidence that WAFF's stated reason was a pretext for gender discrimination. *See Brooks*, 446 F.3d at 1163 ("A reason is not a pretext for discrimination 'unless it is shown both that the reason was false, *and* that discrimination was the real reason.'") (quoting *Hicks*, 509 U.S. at 515). In fact, it is not clear that Ms. Tetteh believes that her gender played a role in her termination.[4] The Court therefore adopts the portion of the Magistrate Judge's report and recommendation addressing Ms. Tetteh's claim that WAFF terminated her because she is female. That claim fails as a matter of law.

### C. Race Discrimination – Termination

Ms. Tetteh did not object to the Magistrate Judge's finding with respect to her racial discrimination claim. The Court finds no clear error and agrees with the Magistrate Judge that Ms. Tetteh failed to make out a prima facie case of racial discrimination. WAFF replaced Ms. Tetteh with an African American employee, and that fact is fatal to her claim. (Doc. 48, pp. 23–24). The Court adopts the magistrate judge's recommendation and grants summary judgment to WAFF on Ms. Tetteh's race discrimination claim.

---

[4] At Ms. Tetteh's deposition, she was asked if she believed WAFF terminated her because of her gender. She responded: "It's possible." (Doc. 26-1, p. 71).

### D. Title VII Retaliation

Ms. Tetteh objected to the Magistrate Judge's recommendation that the Court enter judgment on her retaliation claims. Under Title VII, an employer may not retaliate against an employee because the employee "opposed any practice made an unlawful employment practice" or "made a charge, testified, assisted, or participated in any matter in an investigation, proceeding, or hearing [under Title VII]." 42 U.S.C. § 2000e-3(a). When a plaintiff claims retaliation for opposing an unlawful employment practice, she must demonstrate that she "had a good faith, reasonable belief that [her] employer was engaged in unlawful employment practices." *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997). Ms. Tetteh has not established a prima facie case of retaliation because her belief that she was opposing an unlawful employment practice was not reasonable in light of existing law.

To establish that he has a good faith, reasonable belief that his employer engaged in unlawful employment practices, a plaintiff must show that "(1) he subjectively believed in good faith that [the employer's] behavior was discriminatory; and that (2) his belief was objectively reasonable in light of the facts and record presented." *Mulkey v. Bd. of Comm'rs of Gordon Cnty.*, 488 Fed. Appx. 384, 389 (11th Cir. 2012) (citing *Butler v. Ala. Dep't of Transp.*, 536 F.3d 1209, 1213 (11th Cir. 2008)). To determine whether the plaintiff's belief was

11

reasonable, that belief must be measured against existing law. *Mulkey*, 488 Fed. Appx. at 389 (quoting *Clover v. Total Sys. Serv's, Inc.*, 176 F.3d 1346, 1351 (11th Cir. 1999)). "Where binding precedent squarely holds that particular conduct is not an unlawful employment practice by the employer, and no decision of [the Eleventh Circuit] or of the Supreme Court has called that precedent into question[,] . . . an employee's contrary belief that the practice is unlawful is unreasonable." *Butler*, 536 F.3d at 1214 (citing *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1388 n.2 (11th Cir. 1998)).

As discussed above in Section A, Eleventh Circuit case law explaining what constitutes severe or pervasive conduct forecloses Ms. Tetteh's hostile work environment claims. *See, e.g.*, *Clover*, 176 F.3d at 1351 (holding that an employee's belief that she was opposing an unlawful employment practice was objectively unreasonable). The hostile work environment cases discussed above illustrate that Ms. Tetteh could not have reasonably believed her work environment was hostile in light of binding precedent. *See, e.g.*, *Mendoza*, 195 F.3d at 1245. The conduct about which Ms. Tetteh complains "misses the mark." *Clover*, 176 F.3d at 1351.[5] The Court adopts this portion of the report and recommendation and grants summary judgment in favor of WAFF on Ms. Tetteh's retaliation claims.

---

[5] Ms. Tetteh contends that the Magistrate Judge erred by concluding that Ms. Tetteh's belief was objectively unreasonable, even though he also found that a reasonable juror could conclude that "Theissen believed African-Americans . . . were inferior to or less capable than Caucasians,

### E. Retaliatory Hostile Work Environment

Ms. Tetteh did not include a count in her complaint for retaliatory hostile work environment, (*see* Doc. 1), and she did not amend her complaint at any time to include that claim. Because Ms. Tetteh did not attempt to assert a retaliatory hostile work environment claim until oral argument on WAFF's summary judgment motion, the Court declines to entertain the claim.[6]

At oral argument, counsel for Ms. Tetteh directed the Magistrate Judge to "Count 1, paragraph 30" to support Ms. Tetteh's contention that she pled a retaliatory hostile work environment claim in her complaint. (Doc. 49, p. 90). That portion of the complaint sets forth Ms. Tetteh's discrimination claims; it does not include a retaliatory hostile work environment claim, and the Court declines to read into the complaint claims not specifically pled. Therefore, the Court adopts this portion of the report and recommendation.

---

particularly Caucasian males," and that "based on this belief, Theissen did not treat Tetteh with respect." (Doc. 48, p. 26; Doc. 51, p. 44). The Court is not unsympathetic to Ms. Tetteh's frustration with this apparent incongruity, but the Court measures the objective reasonableness of Ms. Tetteh's belief against existing law. Under Eleventh Circuit case law, the conduct she opposed does not constitute a hostile work environment. *See, e.g.*, *Mendoza*, 195 F.3d at 1245; *Clover*, 176 F.3d at 1351.

[6] At oral argument on December 11, 2013, counsel for Ms. Tetteh stated:

> [J]ust to throw this out there, because I didn't realize this case was out there until I was researching some of this, it's *Gowski versus Peake*, it's an 11th Circuit case, and for the first time in June of 2012, the 11th Circuit recognized a claim for a retaliatory hostile work environment.

(Doc. 49, p. 87) (citing *Gowski v. Peake*, 682 F.3d 1299 (11th Cir. 2012)).

### F. Disability Discrimination

Under the ADA, covered employers may not "discriminate against a qualified individual on the basis of disability in regard to . . . discharge of employees . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To establish a *prima facie* case for disability discrimination under the ADA, a plaintiff must demonstrate that she: "(1) [has] a disability; (2) [is] qualified, with or without reasonable accommodations; and (3) [was] unlawfully discriminated against because of [her] disability." *Rossbach v. City of Miami*, 371 F.3d 1354, 1355–56 (11th Cir. 2004).

A reasonable accommodation is a "modification[] or adjustment[] to the work environment, or to the manner or circumstances under which the position . . . is customarily performed, to enable a qualified individual with a disability to perform the essential functions of that position." *Webb v. Donley*, 347 Fed. Appx. 443, 446 (11th Cir. 2009) (quoting 29 C.F.R. § 1630.2(o)(1)(ii)). The plaintiff bears the burden of identifying a reasonable accommodation. *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1286 (11th Cir. 1997) (citing *Willis v. Conopco*, 108 F.3d 282, 283 (11th Cir. 1997)); *see also Knowles v. Sheriff*, 460 Fed. Appx. 833, 835 (11th Cir. 2012).

The Magistrate Judge found that Ms. Tetteh's claim fails because carrying one of WAFF's cameras was an "essential function" of Ms. Tetteh's job as a sports

reporter, WAFF's cameras weigh at least 20 pounds, Ms. Tetteh's doctor restricted her from lifting more than five pounds, and no reasonable accommodation existed that would allow Ms. Tetteh to return to work. (Doc. 48, pp. 36–38). In her objections, Ms. Tetteh argues that "WAFF is unable to establish that use of a camera weighing over five pounds is an essential function . . . Plaintiff was not employed as a camera person, but other individuals were employed specifically for this position." (Doc. 51, p. 42). The Court is not persuaded. As the Magistrate Judge noted, Ms. Tetteh's job title was "Anchor/Reporter/Photographer," (Doc. 26-3, p. 2). Ms. Tetteh understood that carrying a camera was one of her responsibilities. (Doc. 26-1, p. 58). Because operating a WAFF camera was one of Ms. Tetteh's essential job functions, Ms. Tetteh bears the burden of proving that a reasonable accommodation was available.

Ms. Tetteh contends that two accommodations were available, and either would have allowed her to perform the essential functions of her job. First, she saw a small camera at WAFF that she believes was within her lifting restrictions. Second, she argues that WAFF could have assigned a photographer to work with her. The Court addresses these arguments in reverse order.

Requiring WAFF to reassign one of its photographers, hire another photographer, or send Mr. Theissen to record footage for Ms. Tetteh was not reasonable under the circumstances. Ms. Tetteh worked in a two-person sports

15

department, and WAFF was not required to hire a new person or reassign another one of its employees to assist Ms. Tetteh in performing the essential functions of her job. *See Holbrook v. City of Alpharetta*, 112 F.3d 1522, 1528 (11th Cir. 1997); *see also Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1367 (11th Cir. 2007).

As for the small camera, Ms. Tetteh has not presented sufficient evidence to create a jury question about whether the small camera that she saw at WAFF would have enabled her to perform her essential job responsibilities with the weight restrictions that her doctor imposed. When asked in her deposition whether the camera weighed less than five pounds, Ms. Tetteh replied, "[i]t was a small camera and to my visual estimation, it did not appear to be more than five pounds . . . I can't say with 100 percent certainty. But to the best of visual estimation, it did not appear to be more than five pounds . . . I had not used it before." (Doc. 26-1, p. 58 (227)). Ms. Tetteh acknowledged that she did not know if the camera worked. (*Id.* at 58 (228)). Ms. Tetteh expressed her personal conviction that WAFF could have accommodated her somehow: "Raycom is a company with more than 25 stations, I believe. And somewhere within Raycom, as well as they have Raycom sports, there possibly could have been a small camera for me to use, if they had looked into it." (Doc. 26-1, pp. 58 (228)-59 (229)).

All of Ms. Tetteh's testimony regarding the availability of a small camera is speculation and guesswork. A jury question cannot rest on speculation. *Cordoba*

*v. Dillard's Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) ("'unsupported speculation . . . does not meet a party's burden of producing some defense to a summary judgment motion. Speculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.'") (quoting *Hedberg v. Ind. Bell Tel. Co.*, 47 F.3d 928, 931–32 (7th Cir. 1995)) (emphasis in *Cordoba*); *Horton v. Maersk Line, Ltd.*, --- Fed. Appx. ----, 2015 WL 845577, at *5 (11th Cir. Feb. 27, 2015) ("Plaintiff's unsupported speculations are insufficient to raise a genuine issue of material fact.").

Ms. Tetteh argues that "WAFF presented no evidence it was unable to accommodate Plaintiff," (Doc. 51, p. 45), but that argument turns Ms. Tetteh's burden on its head. *Stewart*, 117 F.3d at 1286 ("the burden of identifying an accommodation that would allow a qualified individual to perform the job rests with that individual, as does the ultimate burden of persuasion with respect to demonstrating that such an accommodation is reasonable."). WAFF did not have to prove that it was unable to accommodate Ms. Tetteh, and Ms. Tetteh failed to carry her burden of proving that WAFF had a camera that satisfied the weight restrictions that Ms. Tetteh's doctor imposed.[7] Because Ms. Tetteh failed to

---

[7] During discovery, Ms. Tetteh had the opportunity to develop information about the small camera that she saw. She could have determined how much the camera weighed, and she could have explored whether that camera or another lightweight camera that met Ms. Tetteh's lifting restrictions was compatible with WAFF's on-air equipment. When the defendants filed their motion for summary judgment, Ms. Tetteh did not ask the Court to defer consideration of the motion under Fed. R. Civ. P. 56(d) so that she could develop this evidence. Although the Court

identify a genuine issue of material fact concerning available accommodations, her disability discrimination claim fails as a matter of law.[8]

### Conclusion

The Court accepts the Magistrate Judge's recommendation and adopts his report with the few, specific exceptions discussed above. Consistent with this opinion, the Court will enter judgment in favor of the defendants on all of Ms. Tetteh's claims.

**DONE** and **ORDERED** this March 27, 2015.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

---

has the option under Fed. R. Civ. P. 56(e)(1) of providing Ms. Tetteh with "an opportunity to properly support or address the fact[s]" concerning a small camera, the Court believes that it would be unfair to the defendants to exercise that option at this late stage of these proceedings. Without this evidence, Ms. Tetteh's disability discrimination claim fails as a matter of law.

[8] WAFF objects to the finding in the report and recommendation that Ms. Strawn's March 2009 comment that Ms. Tetteh should not return to work until she was "one hundred percent" constitutes direct evidence to support Ms. Tetteh's disability discrimination claim. (Doc. 50). The Court does not need to adopt that portion of the Magistrate Judge's report and recommendation to enter summary judgment in favor of the defendants' on Ms. Tetteh's disability discrimination claim. Therefore, the objection is moot, and the Court declines the invitation to discuss a moot point.